**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0292n.06
Filed: May 23, 2008

**No. 07-3634**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| V. | ) | OHIO, EASTERN DIVISION |
| | ) | |
| | ) | |
| DON N. HAWKINS, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: **COLE and GRIFFIN, Circuit Judges; FORESTER, Senior District Judge.***

**KARL S. FORESTER, Senior District Judge.** This is an appeal from the denial of a

motion to suppress evidence from a search of the residence of defendant-appellant Don N.

Hawkins (hereinafter "Hawkins"). For the reasons set forth below, we AFFIRM the decision of

the district court. Because this appeal does not involve any novel issues of law, the opinion has

been designated not for full-text publication.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

In June of 2006, officers with the Canton, Ohio, Police Department received information

to the effect that large quantities of cocaine base ("crack") were being sold by a male known as

---

*      The Honorable Karl S. Forester, Senior United States District Judge for the
Eastern District of Kentucky, sitting by designation.

"Hulk" from his residence on the 2300 block of Third Street NW in Canton, Ohio. Officers then located the residence at 2319 Third Street NW based on the description of the residence provided by the informant. They also located two vehicles associated with the residence as described by the informant.

Thereafter, Detective Donald Miller (hereinafter "Det. Miller") contacted a confidential informant known as Confidential Informant #403 ("CI#403")[1] to obtain additional information. Det. Miller described CI#403 in the warrant affidavit as "a reliable informant" who verified the residence of 2319 Third Street NW as being the address of a male known as "Hulk." The confidential informant also provided information regarding Hulk's vehicles, which matched those provided by the first informant, and provided that Eve Ramsey was Hulk's live-in partner at the residence and owned one of the vehicles described.

Officers then contacted CI#403 for the purpose of conducting a controlled buy of crack cocaine from the residence on July 12, 2006. At a secure location, officers first searched CI#403 to ensure he had no drugs on his person or in his vehicle. Det. Miller took CI#403's personal money and provided him with $250 in prerecorded currency to purchase 1/4 ounce of crack cocaine from Hulk. CI#403 contacted Hulk by cell phone on a taped call to arrange for the purchase. Det. Miller followed the informant to the residence and then circled the block. In the meantime, other Canton officers were in place to observe CI#403 arrive at, enter, and exit the

---

[1] The government, in its brief, only identifies one confidential informant, CI#403. However, the warrant affidavit describes two separate confidential informants – Confidential Informant #402 and CI#403. According to the government, only one confidential informant was involved and any reference to "confidential informant #402" was an inadvertent clerical error. Therefore, we assume that any reference in the warrant affidavit to "confidential informant #402" is also meant to refer to CI#403.

residence. After CI#403 left the residence, he met officers at a predetermined secure location where Det. Miller took the drugs from him and conducted another search of his person and vehicle. Det. Miller then field tested the drugs, which were positive for crack cocaine.

Thereafter, CI#403 was shown a photographic line-up of several individuals and identified Hawkins to be the person he knew as Hulk. A second controlled buy was arranged through CI#403 on July 18, 2006. The same procedures were followed, except that officers issued $450 to the informant and instructed him to purchase ½ an ounce of crack cocaine. After CI#403 purchased the drugs from Hulk, they field tested positive for crack cocaine.

Based on the above, officers obtained a search warrant of the residence on July 19, 2006. In an effort to obtain a no-knock, non-consensual warrant, Det. Miller included additional information about Hawkins in the affidavit. This included his status as a convicted felon with several felony arrests and his listing in the computer-aided dispatch system as someone who is considered to be armed and dangerous. The affidavit also listed Hawkins' alleged association with two other men, Donte L. McQueen and Jerome A. Hawkins (the defendant-appellant's brother), who also had violent criminal histories and were known to fight with police and/or resist arrest. Based on the information provided, Det. Miller believed that these felons may be at the residence with Hawkins and armed and dangerous.

The search warrant was executed on Hawkins' residence located at 2319 Third Street NW, Canton, Ohio, on July 21, 2006. During the search, officers found 199.95 grams of cocaine base, electronic scales, baking powder, plastic sandwich bags, $3,384.00 in U.S. currency, razor blades, a crack pipe, and a large Pyrex mixing bowl. Hawkins also made several incriminating statements to officers after his arrest.

Hawkins was charged in a criminal complaint on September 22, 2006, with knowingly and intentionally possessing with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). On October 24, 2006, a federal grand jury returned a three-count indictment charging Hawkins with two counts of distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and one count of possession with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

Hawkins filed a motion to suppress, objecting to the reliability of the confidential informant and alleging that the warrant affidavit contained false statements. At a hearing held on December 7, 2006, the district court denied the motion and Hawkins subsequently entered a conditional guilty plea on January 8, 2007, reserving the right to appeal the district court's ruling on his motion. On April 24, 2007, Hawkins was sentenced to 240 months imprisonment followed by ten years of supervised release. This timely appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. This court has jurisdiction over Hawkins' appeal pursuant to 28 U.S.C. § 1291.

On appeal, we review a district court's decision on a motion to suppress under two complementary standards. The district court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004). This court reviews the evidence "in the light most likely to support the district court's decision." *Id.* The district court's findings about the truth or falsity of statements in the affidavit, and about the reckless nature of any falsehoods, are factual findings reviewed for clear error. *United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002). The question of whether a

search and seizure were reasonable under the fourth amendment is a question of law reviewed *de novo*. *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003). This court affords "great deference" to the magistrate's findings in support of a search warrant and will not set them aside unless they were arbitrary. *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001).

## III.   DISCUSSION

### A.     The District Court's Treatment of the Motion to Suppress

The district court did not provide a written opinion on Hawkins' motion to suppress, but instead ruled from the bench. As there was some confusion at the hearing before the district court, it is helpful to provide detail of the proceedings below. Before the district court, Hawkins raised several challenges to the search of his residence. First, he argued that there was not probable cause for the search because the confidential informant was not a proven, reliable, or credible source. Second, Hawkins argued that several statements in the warrant affidavit were false and, therefore, he was entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to ascertain whether the false statements in the warrant affidavit were made with reckless disregard for the truth.

The district court held a hearing on the motion at which time the district court indicated that it was "being asked to conduct a *Franks* hearing" and that the burden was on Hawkins to prove either that the officer gave false information or was reckless in that regard. Defense counsel called Hawkins to the stand, who testified that the warrant affidavit was false because (1) he had never sold drugs from the residence at issue; (2) even if he had, he would not have sold the crack cocaine at the price alleged in the affidavit, as in the past he had sold 1/4 ounce for $175 only and ½ ounce for $350 only; (3) he never received any phone call from anyone in

5

relation to selling crack cocaine on the dates listed in the warrant affidavit; (4) he did not know anyone named Dante McQueen; and (5) the sales were a case of mistaken identity, as all of the Hawkins brothers "look exactly alike."

Under the impression that Hawkins was the only witness the defense would call at the hearing, the district court then asked whether there was any argument. Rather than indicate he had more witnesses, defense counsel argued the merits, contending that the warrant affidavit was simply a "canned affidavit" that was factually incorrect. He then argued that there was no probable cause for issuance of the warrant based on the false statements in the warrant affidavit. The government responded that Hawkins had failed to make a substantial preliminary showing that a false statement was knowingly or intentionally made or made with reckless disregard for the truth. Therefore, the district court need not get to the warrant itself, as it was presumed to be valid.

The district court then indicated that Hawkins' argument that there was mistaken identity did not meet the "reckless disregard" standard. It further stated that, unless defense counsel could provide a case indicating that a defendant can simply say that a statement in a warrant affidavit is false and that satisfies the burden of proof by a preponderance of the evidence, then the court would find Hawkins had not met his burden and the district court would limit its consideration of the warrant to its four corners when determining whether there was probable cause to issue the warrant.

The district court then asked defense counsel, assuming that everything presented to the issuing judge were true and correct, whether it was enough to establish probable cause. Defense counsel conceded that if the statements in the warrant affidavit were true, then there was

6

probable cause for issuance of the warrant.  The government argued that there was sufficient probable cause to issue the warrant and the district court denied the motion.

Only then did defense counsel indicate that he intended to call the officers as part of his proof that the statements in the warrant affidavit were false.  The district court made it clear it felt that Hawkins "didn't get the ruling you want, so now you decide to call more witnesses" and called a side bar.  After off-the-record discussions, the district court permitted Hawkins to reopen his case, but ruled that the identities of the confidential informants would not be revealed.  After the officers testified essentially to the facts contained in the warrant affidavit, the district court denied the motion without further discussion.

### B.     *Franks* **Hearing**

Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant is entitled to an evidentiary hearing regarding the sufficiency of a warrant affidavit if he can satisfy a two-part test:  (1) he must make a substantial preliminary showing that the warrant affidavit contained false statements that were made "knowingly and intentionally, or with reckless disregard for the truth," and (2) the challenged statements must be necessary to a finding of probable cause.  *Id.* at 155-56.  As a separate panel of this court has noted, "[w]arrant affidavits carry with them 'a presumption of validity,' and 'the challenger's attack must be more than conclusory' and must allege 'deliberate falsity or reckless disregard [on the part] *of the affiant*, not of any nongovernmental informant.' "  *United States v. Stuart*, 507 F.3d 391, 396 (6th Cir. 2007) (quoting *Franks*, 438 U.S. at 171) (emphasis in original).  If the defendant fails to make the substantial preliminary showing, the presumption of validity with respect to the challenged affidavit is not overcome and a *Franks* hearing is not required.  *Id.* at 171.

As in *Stuart*, it is not necessary for this panel to decide whether its review of the district court's *Frank*'s ruling should receive review under the clear error or *de novo* standard, as the more exacting *de novo* standard is satisfied in the present case. *Id.* at 396-97 (citing *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002)). Hawkins has not made a showing that any of the statements in the warrant affidavit were deliberately false or made with reckless disregard for the truth and, thus, his argument fails under either standard.

Hawkins argues to this court that at the hearing Det. Miller testified that he had followed CI#403 to Hawkins' residence during the controlled buys, then drove around the block. Other officers were placed at the scene to observe the informant once he was parked in front of the residence. Thus, Hawkins contends, because Det. Miller never actually saw CI#403 enter Hawkins' residence, his statement in the warrant affidavit that CI#403 was never out of visual contact during the transactions other than when he was inside the residence was, at best, made with reckless disregard for the truth and, at worst, constituted perjury.

Hawkins has failed to show that Det. Miller made any deliberately false or reckless statements in the warrant affidavit because Hawkins mischaracterizes the affidavit. The warrant affidavit in paragraph 5 states that Det. Miller "followed [CI#403] to the residence of 2319 3rd St. NW and had [CI#403] observed enter and exit the residence by members of the Vice/Criminal Intelligence Unit. [CI#403] was never out of visual contact during the transaction other than when [CI#403] was inside the residence." Nowhere in the warrant affidavit does Det. Miller state that he personally observed Hawkins entering the residence; rather, he states that other officers in the Vice/Criminal Intelligence Unit observed CI#403 enter and exit the residence. Therefore, Hawkins' suggestions to the contrary are simply wrong and without support. Further,

8

Hawkins has not cited any law for his suggestion that the other officers should have provided separate affidavits of their own in support of the warrant. Other than Hawkins' statement, nothing in the record supports the assertion that CI#403 was not out of visual contact of the officers other than when he was inside the residence.

Similarly, Hawkins' own testimony before the district court was insufficient to establish the falsity of the affidavit. His suggestion that this may have been a case of mistaken identity is insufficient to prove that Det. Miller, as the affiant, intentionally provided false information in the warrant affidavit or made statements with reckless disregard for the truth. It is obvious from its ruling that the district court did not find Hawkins' testimony to be credible, and this finding can only be disturbed if there is clear error, which is not the case here. The district court did not err in determining that Hawkins had failed to make a substantial preliminary showing that statements in the warrant affidavit were intentionally false or were made with reckless disregard for the truth. Therefore, Hawkins was not entitled to a *Franks* hearing and the district court's ruling will be affirmed.

## C.      Probable Cause and Applicable Legal Principles

Pursuant to the Fourth Amendment, there must be probable cause for a search warrant to issue. U.S. Const. amend. IV; *see also United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). This court will uphold a warrant where the issuing judge "had a 'substantial basis for . . . conclud[ing'] that a search would uncover evidence of wrongdoing." *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993) (quoting *United States v. Pelham*, 801 F.2d 875, 877-78 (6th Cir. 1986)). "[W]hen judging the sufficiency of an affidavit to establish probable cause in support of a search warrant, the Supreme Court has 'repeatedly said that after-the-fact scrutiny . .

9

. should not take the form of de novo review. . . . Rather, reviewing courts are to accord the magistrate's determination "great deference." ' " *United States v. Terry*, 522 F.3d 645, 647(6th Cir. 2008).

Probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  A judge presented with a request for a search warrant must consider the totality of the circumstances, not individual pieces of evidence in isolation, and make a "practical, commonsense" determination whether probable cause exists.  *Id.*  The affidavit must indicate a nexus between the place to be searched and the evidence sought and this nexus may be established by the nature of the items and normal inferences of where a person would keep such items.  *See Laughton*, 409 F.3d 744, 747 (6th Cir. 2005); *United States v. Rosenbarger*, 536 F.2d 715, 719 (6th Cir. 1976).

At the hearing, Hawkins' counsel essentially conceded that if the statements in the warrant affidavit survived a *Franks* challenge, then there was probable cause to issue the warrant. On appeal, Hawkins argues that the warrant affidavit was insufficient to establish probable cause because it did not contain information about the underlying circumstances from which the officer concluded that the informant was credible or that his information was reliable, other than a conclusory statement that the informant was "reliable."  Thus, Hawkins argues, the warrant affidavit fails to establish the reliability of the confidential informant's statements to police and does not provide the requisite probable cause to support issuance of the warrant.

Where a warrant affidavit provides no indicia of an informant's reliability, "courts insist that the affidavit contain substantial independent police corroboration."  *United States v. Frazier*,

423 F.3d 526, 532 (6th Cir. 2005). However, this independent police corroboration may be established by a police-monitored controlled buy such as those that occurred in the present case.

In *United States v. Coffee*, 434 F.3d 887 (6th Cir. 2006), *cert. denied*, 547 U.S. 1158 (2006), a separate panel of this court considered a similar case. An informant provided information to officers that he had purchased drugs from the defendant. The officers then executed a controlled buy similar to the ones in this case. Although there were no statements in the warrant affidavit about the reliability of the confidential informant, based on the controlled buy the court concluded that the informant's information was sufficiently corroborated and, thus, the warrant affidavit provided sufficient probable cause.

This case is essentially indistinguishable from the circumstances in *Coffee*, other than the fact that the informant in *Coffee* wore a wire during the purchase and there were *two* controlled buys in the present case. As in *Coffee*, "Officer [Miller's] statements that he set up the controlled buy and took necessary precautions before and after the orchestrated purchase adequately corroborated the CI's information and, thus, provided sufficient probable cause for the issuance of the search warrant." *Id.* at 894.

Hawkins' reliance on *Aguilar v. State of Texas*, 378 U.S. 108 (1964), *abrogated by Illinois v. Gates*, 462 U.S. 213 (1983), ignores the substantial corroborating information contained in the warrant affidavit. Hawkins' other piecemeal attacks on the warrant affidavit fail as well.[2] Courts should refrain from reviewing a warrant affidavit in a "hypertechnical" manner

---

[2] For example, Hawkins asserts that the warrant affidavit gives no indication of how CI#403 verified the particular residence as belonging to Hulk, whether the vehicles mentioned were driven by Hulk, how CI#403 knew that Eve Ramsey resided at that location, or whether the phone calls made before the controlled purchases were made to anyone at the specific residence at issue.

11

or engaging in "line-by-line scrutiny." Instead, courts must consider "whether the totality of the circumstances supports a finding of probable cause." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004). In the present case, reviewing the warrant affidavit as a whole, it is clear that the information provided therein created a fair probability that drugs or other evidence would be found at Hawkins' residence.

## IV.    CONCLUSION

Accordingly, the district court did not err in denying Hawkins' motion to suppress and the decision of the district court is AFFIRMED.