NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0053n.06

No. 12-4482

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 21, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,                     )
                                              )
        Plaintiff-Appellee,                   )
                                              )
            v.                                ) ON APPEAL FROM THE UNITED
                                              ) STATES DISTRICT COURT FOR
TORIANO GOODWIN,                              ) THE NORTHERN DISTRICT OF
                                              ) OHIO
        Defendant-Appellant.                  )
                                              )

BEFORE:  CLAY, ROGERS, Circuit Judges, and LUDINGTON, District Judge.[*]

LUDINGTON, District Judge. Appellant Toriano Goodwin  pleaded guilty to being a felon in possession of a firearm and possessing an unregistered machine gun.  Before pleading guilty, Goodwin moved to suppress the machine gun recovered from his residence on the grounds that the underlying search warrant was invalid.  The district court denied the motion, and Goodwin appeals that decision.  For the following reasons, the district court's decision denying the motion to suppress is AFFIRMED.

**I**

On January 18, 2012, a federal grand jury indicted Goodwin on charges of (1) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and (2) possession of an unregistered machine gun in violation of 26 U.S.C. § 5861(d).

---

[*]The Honorable Thomas L. Ludington, Eastern District of Michigan, sitting by designation.

On June 20, 2012, Goodwin filed a motion to suppress evidence recovered from his residence, which the district court denied. Goodwin then pleaded guilty to both charges pursuant to a conditional plea agreement under Federal Rule of Criminal Procedure 11(a)(2), reserving his right to appeal the district court's decision denying his motion to suppress.

**A**

On December 16, 2011, a United States magistrate judge issued a warrant to search Goodwin's residence. The application for the warrant and the supporting affidavit were prepared by Special Agent Matthew J. Hartnett of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), who was investigating the theft of several firearms.

Agent Hartnett's investigation focused on recovering a machine gun stolen from the home of Charles Moesher. The machine gun, a Ruger model ACC556, was one of the fifteen stolen firearms. On September 28, 2011, the Ohio State Police stopped Richard J. McCormick, Moesher's stepson, and discovered that McCormick was in possession of one of Moesher's stolen firearms. Following the traffic stop, ATF agents began investigating McCormick's involvement in the theft of Moesher's guns.

On October 15, 2011, Agent Hartnett interviewed Brian White, a self-described friend of McCormick, about McCormick's attempts to sell a machine gun. White stated that on September 3, 2011, McCormick e-mailed him photographs of a Ruger machine gun and said that it was available for $1,500.00. According to White, McCormick stressed the rarity and value of the machine gun: he stated that the machine gun was worth between $9,000 and $12,000, that it was illegal to buy a machine gun in Ohio, and that an owner needed a Class 3 license to possess such a

gun. When White rejected the offer, McCormick asked if he knew of anyone who would be interested in buying the "cheap as hell" machine gun. Hartnett Aff. ¶ 2.

On October 31, 2011, the Lorain Police Department conducted a controlled buy of heroin from Kevin Watson. During the controlled buy, Watson stated that "he got all of his guns from McCormick and had gotten rid of them already." *Id.* ¶ 3.

About six weeks later, on December 15, 2011, Agent Hartnett interviewed Watson about his contact with McCormick. Watson stated that he had brokered the sale of a machine gun from McCormick to Toriano Goodwin. Corroborating McCormick's earlier statement to White that he was going to sell the machine gun for "cheap as hell," Watson explained that Goodwin had exchanged $500 and some cocaine for the machine gun. After completing the deal, Goodwin stated that he "intended to keep the Ruger machine gun and did not want to get rid of it because it was so unique." *Id.* ¶ 4.

Based on his training and personal experience, Agent Hartnett knew that "machine guns, due to their inherent value and scarcity, are well maintained by their possessors in their homes, often in secured locations in their homes." *Id.* ¶ 6. Agent Hartnett verified Goodwin's address using the Ohio Motor Vehicle records, which indicated that Goodwin had listed 4739 Oakhill Boulevard as his residence on November 29, 2011.

After reciting the details of the investigation, Agent Hartnett asserted in his affidavit that he had probable cause to believe that Goodwin was in possession of an unregistered machine gun. The search warrant described a single item to be searched for, the Ruger machine gun, and described Goodwin's residence as the place to be searched. The magistrate judge signed the warrant on

December 16, 2011.

**B**

On June 20, 2012, Goodwin filed a motion to suppress challenging the validity of the search warrant and seeking an evidentiary hearing. The motion focused on the sufficiency of the search warrant: Goodwin argued that the affidavit (1) was based on stale information; (2) provided insufficient evidence of the nexus between the machine gun and his residence; and (3) provided insufficient evidence of the reliability of Watson's statement.

The district court denied Goodwin's motion to suppress and canceled the evidentiary hearing. The district court concluded that, taking into account the totality of the circumstances, the search warrant was supported by probable cause. Furthermore, because Goodwin did not contest any of the factual information presented in the parties' briefs, the district court concluded that an evidentiary hearing was not warranted.

**II**

"When reviewing the denial of a motion to suppress evidence, this Court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*." *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009) (citing *United States v. Foster*, 376 F.3d 577, 585 (6th Cir. 2004)). "Whether a search and seizure was reasonable under the Fourth Amendment is a question of law." *Id*. (citing *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003)). Because the district court denied Goodwin's motion to suppress, "we review all evidence in the light most favorable to the government." *Id*.

**A**

The probable cause requirement for a search warrant "is concerned with facts relating to a presently existing condition." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (internal quotation marks omitted). Thus, "the critical question is whether the information contained in the affidavit, when presented to the judge, established that there was a fair probability that evidence would still be found at the location of the search." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006) (internal alterations and quotation marks omitted).

The staleness inquiry is tailored to the specific circumstances in each case. *Id.* (citing *Spikes*, 158 F.3d at 923). "[T]he length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling." *Id.* "[E]ven if a substantial amount of time has elapsed between a defendant's last reported criminal activity and the issuance of the warrant, it is possible that the warrant is not stale." *Id.* (internal quotation marks omitted). The test is flexible, taking account of four factors:

1. the character of the crime (chance encounter in the night or regenerating conspiracy?)

2. the criminal (nomadic or entrenched?)

3. the thing to be seized (perishable and easily transferable or of enduring utility to its holder?)

4. the place to be searched (mere criminal forum of convenience or secure operational base?).

*Id.* At 572-73 (internal quotation marks omitted).

Goodwin argues that the affidavit's information was stale because five months elapsed between the time the machine gun was stolen from Moesher's home in August and the time the machine gun was found in Goodwin's residence in December.[1] But "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001).

The first factor to be considered is the character of the crime. The illegal firearm possession alleged in the affidavit is not a one-time occurrence but rather a continuous and ongoing offense. "Possession is a course of conduct, not an act; by prohibiting possession Congress intended to punish as one offense all of the acts of dominion which demonstrate a continuing possessory interest in a firearm." *United States v. Jones*, 533 F.2d 1387, 1391 (6th Cir. 1976). Possession of a firearm is a continuing offense that ceases only when the felon relinquishes possession. *United States v. Newman*, No. 96-1983, 1998 WL 30821, at *2 (6th Cir. Jan. 21, 1998).

This Court has previously held that the continuous nature of the crime of illegal firearm possession affects the staleness inquiry. For example, in *United States v. Pritchett*, a magistrate judge issued a warrant more than four months after the witness claimed to have last seen the defendant in possession of firearms. 40 F. App'x 901, 905–06 (6th Cir. 2002). We concluded that

---

[1]Even setting aside Goodwin's erroneous calculation that five months separate August and December, Goodwin ignores the district court's finding that the search warrant covered only three months. The district court determined that the search warrant covered the time period between September 3, 2011 (the date McCormick e-mailed Brian White) and December 15, 2011 (the date Watson admitted to brokering the gun exchange). This determination took into account the typographical error contained in the affidavit. The district court noted that the original search warrant affidavit erroneously stated that law enforcement stopped McCormick on August 28, 2011, rather than September 28, 2011. If the August 28 date had been accurate, McCormick would not have been able to send the e-mail to Brian White because he would have been in custody. The district court concluded that this typographical error was of "no moment" because the discrepancy would not have been readily apparent to the magistrate judge. The district court found that the appropriate dates (September 3 to December 15) indicate that the search warrant covered a time span of three months.

because "[f]irearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time," the witness's information regarding the firearms was not stale. *Id.* Relying on similar reasoning, in *United States v. Lancaster* we held that information regarding a defendant's possession of a machine gun over two years before the warrant issued was not stale. 145 F. App'x 508, 513 (6th Cir. 2005).

Both of Goodwin's offenses—being a felon in possession of a firearm and possession of an unregistered machine gun—are ongoing offenses. The element of possession and the fact that a weapon has continuing value suggests these crimes are more like "regenerating conspiracies" than "chance encounters," and therefore this factor weighs against a finding that the information was stale.

The second factor to be considered is whether the criminal is nomadic or entrenched. If a criminal defendant moves frequently with the hope of avoiding detection or capture, the probability that evidence of his criminal conduct will be found in a given location diminishes rapidly with the passage of time. *Abboud*, 438 F.3d at 573. Here, however, the affidavit supported the conclusion that Goodwin was an "entrenched" criminal because the ongoing possession crimes were likely to have occurred at Goodwin's residence. Based on his training and experience, Agent Hartnett stated that machine gun owners often keep machine guns in their homes, making a possessor's residence the site of an ongoing crime. Goodwin was a resident of 4739 Oakhill Boulevard, as verified by the Ohio DMV record search. The search warrant affidavit stated that Goodwin had reported his address as 4739 Oakhill Boulevard as late as November 2011, the month preceding the issuance of the warrant. Based on the information in the affidavit, there was a fair probability that law

enforcement would locate the machine gun at a single location—Goodwin's residence.

The third factor to be considered is whether the alleged evidence is "perishable" or "of enduring utility to its holder." *Abboud*, 438 F.3d at 573. In contrast to perishable goods, durable goods can, by their nature, remain in a defendant's possession for a longer period of time.

The search warrant sought a Ruger machine gun, which is a durable good. *See Pritchett*, 40 F. App'x at 906 ("Firearms are durable goods that might well be expected to remain in a criminal's possession for a long period of time."). In addition, machine guns are generally more expensive than more common types of firearms; Moesher estimated that the value of the machine gun was between $9,000 and $12,000. Thus, a machine gun is a durable good with "enduring utility to its holder."

The final factor to be considered is whether the place identified by the search warrant is a "mere criminal forum of convenience or secure operational base," because there is a greater probability of finding evidence at a location that is "at the heart of the criminal charges." *Abboud*, 438 F.3d at 573–74.

The fact that the place to be searched was Goodwin's home implicates "a secure operational base," making the warrant's three-month time span less significant. *See Greene*, 250 F.3d at 481 ("The place to be searched was the defendant's home, suggesting that there was some permanence to the defendant's base of operation.") (quoting *United States v. Yates*, 132 F. Supp. 2d 559, 565 (E.D. Mich. 2001)). As explained by Agent Hartnett, a machine gun owner will often keep the machine gun in his or her home. A machine gun possessor's residence would therefore be a "secure operational base" where the ongoing criminal activity—illegal possession of a machine gun—occurs over a span of time.

All of the factors weigh against a claim of staleness. The information contained in the affidavit established that at the time the warrant was issued, there was a fair probability that the machine gun would be found at Goodwin's residence.

**B**

Goodwin next argues that there is an insufficient nexus between the machine gun and his residence. An affidavit offered in support of a search warrant "must indicate a nexus between the place to be searched and the evidence sought and this nexus may be established by the nature of the items and normal inferences of where a person would keep such items." *United States v. Hawkins*, 278 F. App'x 629, 634 (6th Cir. 2008). An issuing magistrate judge is "'entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'" *United States v. Graham*, 275 F.3d 490, 503 (6th Cir. 2001) (quoting *United States v. Cairedo*, 85 F.3d 1184, 1192 (6th Cir. 1996)). As explained above, the value of the machine gun, Goodwin's statement that "he intended to keep the Ruger machine gun," and Agent Hartnett's experience that owners usually keep machine guns in their homes all indicate that there was a sufficient nexus between the machine gun and Goodwin's residence. The magistrate judge properly relied on this information in his assessment of the probable location of the evidence.

**C**

Goodwin also argues that because Agent Hartnett did not attest to Watson's reliability based on prior contacts, the warrant was not supported by probable cause.[2] Probable cause for the issuance

---

[2] Goodwin's briefs also assert that Agent Hartnett did not attest to the reliability of "informant McCormick" in the affidavit. Nothing in the affidavit, however, suggests that Agent Hartnett relied on McCormick as an informant, or even interviewed McCormick about the stolen machine gun. "The affidavit is judged on the adequacy of what it does contain,

of a search warrant may be based on an informant's hearsay information, but the issuing judge must have a basis for finding that the informant is reliable, truthful, and in a position to know the information provided. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009). An informant's reliability, veracity, and basis of knowledge "should not be applied rigidly as a test, but should be considered in weighing all of the circumstances." *Gunter*, 551 F.3d at 479–80. Deficiencies in one criterion may be made up for by a strong showing in another. *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

In the affidavit, Agent Hartnett states that he relied on the information provided by Kevin Watson, the broker who claimed to have arranged the sale between McCormick and Goodwin. Agent Hartnett does not attest to Watson's reliability based on prior contacts, and Goodwin argues that this omission means that the magistrate judge did not have a substantial basis for finding probable cause. Goodwin's argument is without merit, however, because Watson's statement contained sufficient indicia of reliability.

Although the affidavit does not include statements concerning Watson's reliability based on prior contacts, it does allege enough facts to establish Watson's veracity: (1) Watson provided in-person information to law enforcement, (2) he provided information against his own interest, and (3) his information cross-corroborated White's prior statements.

"An informant's [in-person] tip is considered to have greater reliability, and therefore to be more supportive of a finding of probable cause, if the affidavit [establishes] that the name of the

_____

not on what it lacks, or on what a critic may say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). The affidavit does not contain any references to McCormick providing information to law enforcement, and therefore the Court need not consider whether McCormick was a "reliable" informant.

informant has been disclosed to the issuing judge. " *United States v. May*, 399 F.3d 817, 823 (6th Cir. 2005) (citing *United States v. Helton*, 314 F.3d 812, 820 (6th Cir. 2003)). The informant's reliability is grounded on the fact that if the informant's statement is fabricated, he would be subject to criminal liability. *Id.* (citing *Gates*, 462 U.S. at 233). Here, the affidavit not only discloses Watson's identity, it also states that Watson provided the information in-person to law enforcement. Agent Hartnett put Watson "through the crucible of a thorough interview," which provided Agent Hartnett "the opportunity to observe [Watson's] demeanor and credibility and to hold him accountable if his story was later found to be falsified." *United States v. Ruth*, 489 F. App'x 941, 943 (6th Cir. 2012) (citing *Henness v. Bagley*, 644 F.3d 308, 31–19 (6th Cir. 2011)) (internal quotation marks omitted). The fact that law enforcement interviewed Watson in-person and disclosed his identity to the magistrate judge gives greater credibility to Watson's statements.

Watson's credibility is further reinforced by the fact that he provided information against his own interest. "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their admissions." *United States v. Harris*, 403 U.S. 573, 583 (1971). Watson admitted to brokering the sale of the machine gun, thereby providing information against his interest. Watson's in-person admission and the disclosure of his identity to the magistrate judge support a finding that Watson's statement was supported by sufficient indicia of reliability.

In addition to these indications of Watson's credibility, there is ample evidence that the investigators independently corroborated many of the details he provided. When an informant provides information that is consistent with information independently known to the affiant, the reliability of the informant may be established. *See United States v. Tuttle*, 200 F.3d 892, 894 (6th

Cir. 2000).   "'By telling consistent yet independent stories, [] informants provide[] cross-corroboration, and enhance the reliability of the application as a whole.'"   *United States v. Lancaster*, No. 04-5826, 2005 WL 1799385, at *2 (6th Cir. July 28, 2005) (quoting *United States v. Pritchard*, 745 F.2d 1112, 1121 (7th Cir. 1984)).

During the three-month investigation, law enforcement officers obtained evidence that corroborated Watson's statement that Goodwin was in possession of the stolen machine gun.  Two of Watson's statements corroborated other information law enforcement received from White two months earlier.  First, Watson's statement that "Goodwin paid McCormick $500 and some cocaine for the Ruger machine gun" corroborated McCormick's earlier statement to White that he was going to sell the machine gun for "cheap as hell."  Watson also corroborated McCormick's statement to White describing the rarity and value of the machine gun when he said, "Goodwin made the statement that he intended to keep the Ruger machine gun and did not want to get rid of it because it was so unique."  Watson's cross-corroboration of White's statements provided a substantial basis for concluding that he was a reliable informant.

Watson's statement has sufficient indicia of reliability, and therefore the magistrate judge's decision to issue the warrant was not arbitrary.  Based on the totality of the circumstances, the issuing magistrate judge had a substantial basis to conclude that there was probable cause that evidence of criminal activity would be found at Goodwin's residence.

Because the information contained in the affidavit gave the issuing judge a substantial basis for concluding that a search would uncover evidence of wrongdoing at Goodwin's residence, it is not necessary to address the applicability of the "good faith" exception articulated in *United States*

*v. Leon*, 468 U.S. 897 (1984).

**E**

Finally, Goodwin challenges the district court's decision to cancel the evidentiary hearing on Goodwin's motion to suppress. The district court concluded that Goodwin's arguments were "entirely legal in nature," and thus did not require a hearing. *Abboud*, 438 F.3d 554, 577 (6th Cir. 2006).

The district court's decision is sound. A district court's decision not to hold an evidentiary hearing on a motion to suppress is reviewed for an abuse of discretion. *United States v. Montgomery*, 395 F. App'x. 177, 186 (6th Cir. 2010). An evidentiary hearing is required only "when the defendant has set forth contested issues of fact that bear upon the legality of the search." *United States v. Thompson*, 16 F. App'x 340, 344 (6th Cir. 2001) (citing *United States v. Mejia*, 69 F.3d 309, 318 (9th Cir. 1995)).

Goodwin did not contest any factual issues in his brief in support of his motion to suppress; rather, he contested the legal conclusions drawn from the facts by the magistrate judge. The magistrate judge's conclusions that there was sufficient evidence to demonstrate that the affidavit's information was not stale, that there was a sufficient nexus between the criminal activity and the residence, and that Watson's information was reliable are all legal conclusions that "fall squarely within the type of challenges that can be resolved without an evidentiary hearing." *United States v. Lawhorn*, 467 F. App'x 493, 495 (6th Cir. 2012). Goodwin did not present any new factual information to challenge the magistrate judge's legal conclusions, and the district court did not commit an abuse of discretion by cancelling the evidentiary hearing.

**III**

For the reasons stated, we **AFFIRM** the district court's denial of Defendant Goodwin's

motion to suppress.