******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## STATE OF CONNECTICUT *v.* JOSEPH E.*
### (AC 46582)

Alvord, Moll and Flynn, Js.

*Syllabus*

Convicted, following a conditional plea of nolo contendere, of the crime of criminal possession of a firearm, the defendant appealed, claiming that the trial court had improperly denied his motion to suppress evidence of a shotgun the police seized during a search of his home. K, who had accused the defendant of harassing and threatening her, had taken a photograph of a shotgun in the defendant's home office when she was there to clean his house fourteen months before the search warrant was executed. The defendant contended that the lapse of time between when the photograph was taken and the date that the search warrant was issued rendered probable cause lacking to believe that the materials identified in the search warrant would be in his possession at the time the warrant was issued. *Held*:

The trial court properly denied the defendant's motion to suppress, as the passage of fourteen months did not render the information in the search warrant affidavit stale, and, on the basis of that information, it was reasonable for the judge who issued the warrant to believe that the items sought to be seized would be found at the time the warrant was executed.

Argued October 10, 2024—officially released March 25, 2025

*Procedural History*

Substitute information charging the defendant with two counts each of the crimes of violation of a protective order and criminal possession of a firearm, brought to the Superior Court in the judicial district of Danbury, where the court, *Stango, J.*, denied the defendant's motion to suppress certain evidence; thereafter, the defendant was presented to the court, *Stango, J.*, on a

---

* In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

conditional plea of nolo contendere to one count of criminal possession of a firearm; subsequently, the state entered a nolle prosequi as to the remaining charges; judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (defendant).

*Russell C. Zentner*, senior assistant state's attorney, with whom, on the brief, were *David R. Applegate*, state's attorney, *Mary-Caitlin E. Harding*, assistant state's attorney, and *Tori L. Ludwig*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. Following a conditional plea of nolo contendere, entered pursuant to General Statutes § 54-94a,[1] the defendant, Joseph E., appeals from the judgment of conviction of criminal possession of a firearm in violation of General Statutes (Rev. to 2021) § 53a-217.[2]

---

[1] General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress . . . the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress . . . would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress . . . . A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[2] General Statutes (Rev. to 2021) § 53a-217 provides in relevant part: "(a) A person is guilty of criminal possession of a firearm, ammunition or an electronic defense weapon when such person possesses a firearm, ammunition or an electronic defense weapon and . . . (4) knows that such person is subject to (A) a restraining or protective order of a court of this state that has been issued against such person, after notice has been provided to such person, in a case involving the use, attempted use or threatened use of physical force against another person, or (B) a foreign order of protection, as defined in section 46b-15a, that has been issued against such person in a case involving the use, attempted use or threatened use of physical force against another person . . . . For the purposes of this sec-

The defendant entered his conditional plea following the court's denial of his motion to suppress certain evidence seized from his home. On appeal, the defendant claims that the court improperly denied his motion to suppress because the search warrant application and affidavit failed to establish probable cause for the search of his home and the seizure of his property therein. We affirm the judgment of the trial court.

In its memorandum of decision denying the motion to suppress, the court found the following facts. "In May of 2021, a citizen-informant [K] . . . came to the Bethel Police Department to make a complaint that she was being harassed and threatened by the defendant. [K] informed the police that she had loaned the defendant approximately $45,000 and that the defendant's efforts to repay the loan had become sporadic. Frustrated at the defendant's lack of consistent payments on the debt, [K] informed the defendant by text message that she 'would be moving in a different direction,' implying that she would be taking legal action to help ensure repayment of the $45,000, and concluded the text by stating that she believed that the defendant belonged in jail. The defendant angrily responded to [K] via text, 'I'm sick and tired of your harassment and you telling me I belong in jail.' He then concluded by texting, '[c]an I tell you something else right now and

tion, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction, 'ammunition' means a loaded cartridge, consisting of a primed case, propellant or projectile, designed for use in any firearm, and a motor vehicle violation for which a sentence to a term of imprisonment of more than one year may be imposed shall be deemed an unclassified felony.

"(b) Criminal possession of a firearm, ammunition or an electronic defense weapon is a class C felony, for which two years of the sentence imposed may not be suspended or reduced by the court, and five thousand dollars of the fine imposed may not be remitted or reduced by the court unless the court states on the record its reasons for remitting or reducing such fine."

All references herein to § 53a-217 are to the 2021 revision of the statute.

that's very important that everybody involved understand one thing . . . if I go back to jail at the hand of anybody else, when I get out, there (sic) DEAD.'

"The affidavit in support of the search and seizure warrant in question stated that [K] had knowledge of the defendant's criminal history consisting of felony convictions involving domestic violence and firearms. Further, it stated that the defendant's text message had caused her to believe that her personal safety was in jeopardy because she believed that the defendant had a firearm in his residence. In support of that assertion, [K] provided the Bethel Police Department with information that she had been in the defendant's residence located at . . . Portland Avenue in Redding . . . and, while there, had observed what she believed to be a pump action shotgun in his office. Further, [K] stated to the police that the defendant had previously indicated to her that he sleeps with a firearm next to his bed.

"[K] shared a photo with the Bethel Police Department, dated March 6, 2020, of what appeared to be a pump action style shotgun laying across a desk. [K] stated that this was the weapon that she had seen in the defendant's home when she had been inside the home to clean it and that she had taken this picture of it at that time. [K] expressed to the Bethel Police Department that she was fearful that the defendant still had that weapon. She provided all this information via a sworn written statement.

"The affidavit in support of the search and seizure warrant concluded by adding that the defendant did, in fact, have felony convictions and, in addition, was the respondent to active orders of protection, both of which would bar him from possessing firearms of any kind. On May 18, 2021, the court (*D'Andrea, J.*) authorized the search and seizure warrant for the defendant's

residence. The warrant stated evidence discovered during the execution of the warrant would constitute evidence of violations of . . . General Statutes [§§] 53a-223 and 53a-217.

"On May 19, 2021, the search warrant was executed at the defendant's home, and the search uncovered [a firearm,[3] which was not] the firearm in the picture from March 6, 2020, at the residence. [This] firearm [was] seized as evidence." (Footnote added.)

In a substitute information filed November 8, 2022, the defendant was charged with, inter alia, criminal possession of a firearm in violation of § 53a-217. On November 8, 2022, the defendant filed a motion to suppress the evidence seized from his home. The defendant argued that there was no probable cause for the search because the search warrant relied on stale information. Specifically, the defendant contended that the information in the search warrant was stale because K's picture of the pump action style shotgun was more than fourteen months old when the search warrant was executed and, therefore, evidence was lacking that the firearm was still in the defendant's home. The state filed a memorandum of law in opposition to the defendant's motion to suppress. The court, *Stango, J.*, heard oral argument on the motion to suppress. On March 13, 2023, the court issued a memorandum of decision denying the defendant's motion.

Following the denial of the motion to suppress, the defendant entered a written, conditional plea of nolo contendere to one count of criminal possession of a firearm in violation of § 53a-217. In accordance with

---

[3] In its memorandum of decision, the trial court incorrectly stated that two firearms were seized from the defendant's residence during the search. The search warrant return references a single firearm in addition to ammunition. However, this error did not bear on the trial court's decision to deny the motion to suppress, and it is not considered in our review of the trial court's decision.

the plea agreement, he was sentenced to a total effective term of five years of incarceration, execution suspended after two years, which was the mandatory minimum, followed by three years of probation.[4] This appeal followed.

The defendant's sole claim on appeal is that the court improperly denied his motion to suppress because information relied on in the search warrant affidavit was stale at the time that the search warrant was issued. The defendant contends that the information was stale because the information was fourteen months old "with zero indication of subsequent criminal activity, no reasonable basis for an assumption of ongoing criminal activity, and no additional corroboration . . . ." The defendant argues that, as a result of the lapse of time, there was no probable cause to believe that the materials identified in the search warrant would be in his possession when the warrant was issued. We disagree.

We begin by setting forth the applicable standard of review. "When reviewing the trial court's denial of a motion to suppress, the standard of review to be applied depends on whether the challenge asserted on appeal is to the factual basis of the trial court's decision or to its legal conclusions. . . . [T]o the extent that the trial court has made findings of fact, our review is limited to deciding whether those findings were clearly erroneous. Where, however, the trial court has drawn conclusions of law, our review is plenary, and we must decide

---

[4] The defendant also entered a conditional plea of nolo contendere in a separate docket, to one count of threatening in the second degree in violation of General Statutes § 53a-62 and was sentenced to a concurrent term of 364 days of incarceration, execution suspended, followed by three years of probation. The defendant, in a third docket, also entered a plea of nolo contendere to violation of the conditions of his release in violation of General Statutes § 53a-222 and was sentenced to a concurrent term of five years of incarceration, execution suspended, followed by five years of probation. The defendant does not challenge these convictions in this appeal.

whether those conclusions are legally and logically correct in light of the findings of fact. . . . Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . Accordingly, [o]ur review of the question of whether an affidavit in support of an application for a search [and seizure] warrant provides probable cause for the issuance of the warrant is plenary.'' (Citations omitted; internal quotation marks omitted.) *State* v. *Hanisko*, 187 Conn. App. 237, 245–46, 202 A.3d 375 (2019). ''Because this issue implicates a defendant's constitutional rights . . . we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence.'' (Internal quotation marks omitted.) *State* v. *Shields*, 124 Conn. App. 584, 592, 5 A.3d 984 (2010), aff'd, 308 Conn. 678, 69 A.3d 293 (2013), cert. denied, 571 U.S. 1176, 134 S. Ct. 1040, 188 L. Ed. 2d 123 (2014).

The following legal principles are relevant to our resolution of the defendant's claim. ''Both the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution prescribe that a search warrant shall issue only upon a showing of probable cause. Probable cause to search exists if . . . (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . Although [p]roof of probable cause requires less than proof by a preponderance of the evidence . . . [f]indings of probable cause do not lend themselves to any uniform formula because probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. . . . Consequently, [i]n determining

the existence of probable cause to search, the issuing [judge] assesses all of the information set forth in the warrant affidavit and should make a practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . The determination of probable cause is reached by applying a totality of the circumstances test. . . .

"The role of an appellate court reviewing the validity of a warrant is to determine whether the affidavit at issue presented a substantial factual basis for the [issuing judge's] conclusion that probable cause existed. . . . [Our Supreme Court] has recognized that because of our constitutional preference for a judicial determination of probable cause, and mindful of the fact that [r]easonable minds may disagree as to whether a particular [set of facts] establishes probable cause . . . *we evaluate the information contained in the affidavit in the light most favorable to upholding the issuing judge's probable cause finding.* . . . We therefore review the issuance of a warrant with deference to the reasonable inferences that the issuing judge could have and did draw. . . . In evaluating whether the warrant was predicated on probable cause, a reviewing court may consider only the information set forth in the four corners of the affidavit that was presented to the issuing judge and the reasonable inferences to be drawn therefrom." (Emphasis in original; internal quotation marks omitted.) *State* v. *Hanisko*, supra, 187 Conn. App. 246–47.

"It is undisputed that [t]he determination of probable cause to conduct a search depends in part on the finding of facts so closely related to the time of the issuance of the warrant as to justify a belief in the continued existence of probable cause at that time. . . . Although it is reasonable to infer that probable cause dwindles as time passes, no single rule can be applied to determine

when information has become too old to be reliable. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc." (Citation omitted; internal quotation marks omitted.) *State* v. *Vincent*, 229 Conn. 164, 174, 640 A.2d 94 (1994). "Accordingly, we have refused to adopt an arbitrary cutoff date, expressed either in days, weeks or months, beyond which probable cause ceases to exist." (Internal quotation marks omitted.) *State* v. *Buddhu*, 264 Conn. 449, 465, 825 A.2d 48 (2003), cert. denied, 541 U.S. 1030, 124 S. Ct. 2106, 158 L. Ed. 2d 712 (2004).

We first consider the character of the crime, which, here, was the criminal possession of a firearm. Although our appellate courts have not addressed a claim of staleness with respect to information about a firearm contained in a search warrant affidavit, decisions from other courts are instructive to our analysis. As the United States Court of Appeals for the Sixth Circuit stated in determining that a search warrant affidavit's information was not stale based on a five month period between the date the firearm in question was stolen from another person's home and the date that firearm was found in the defendant's residence: "The illegal firearm possession alleged in the affidavit is not a one-time occurrence but rather a continuous and ongoing offense. Possession is a course of conduct, not an act . . . . The element of possession and the fact that a weapon has continuing value suggests these crimes are more like 'regenerating conspiracies' than 'chance encounters,' and therefore this factor weighs against

a finding that the information was stale." (Citations omitted.) *United States* v. *Goodwin*, 552 Fed. Appx. 541, 544–45 (6th Cir.), cert. denied, 572 U.S. 1128, 134 S. Ct. 2324, 189 L. Ed. 2d 199 (2014).[5]

We next consider the second and fourth factors, the character of the criminal and the place to be searched. During oral argument before this court, the defendant's appellate counsel conceded that the defendant was not a "nomad." The address listed in the warrant was the defendant's home where he was living. Because the defendant was entrenched, rather than nomadic, his staleness argument is undermined. See *United States* v. *Goodwin*, supra, 552 Fed. Appx. 545 ("If a criminal defendant moves frequently with the hope of avoiding detection or capture, the probability that evidence of his criminal conduct will be found in a given location diminishes rapidly with the passage of time. . . . Here, however, the affidavit supported the conclusion that [the defendant] was an 'entrenched' criminal because the ongoing possession crimes were likely to have occurred at [the defendant's] residence." (Citation omitted.)). Our Supreme Court has recognized that the place identified by the search warrant can be considered a " 'secure operational base' " when it is the defendant's home. *State* v. *Johnson*, 219 Conn. 557, 568, 594 A.2d

---

[5] Similarly, in *United States* v. *Lancaster*, 145 Fed. Appx. 508, 513 (6th Cir. 2005), the Sixth Circuit determined that information in a search warrant affidavit was not stale when an informant had witnessed the defendant fire a machine gun two years earlier.

The defendant emphasizes the fact that the weapons in question in *Goodwin* and *Lancaster* were machine guns, whereas the weapon described in the search warrant was a pump action style shotgun. However, in both *Goodwin* and *Lancaster*, the court's analysis did not turn on the type of the firearm used. See *United States* v. *Goodwin*, supra, 552 Fed. Appx. 544 (explicitly discussing "illegal firearm possession"); *United States* v. *Lancaster*, supra, 145 Fed. Appx. 513 (emphasizing that "firearms are not perishable items" and that firearm owners generally keep their firearms for long periods of time). Therefore, we are not persuaded by the defendant's argument.

933 (1991); see also *United States* v. *Goodwin*, supra, 546. In turn, the information in the warrant here is "less likely to be stale" because the defendant's home is not merely a " 'criminal forum of convenience . . . .' " *State* v. *Respass*, 256 Conn. 164, 180, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

Finally, we consider the third factor, the thing to be seized, and whether it is "perishable and easily transferable or of enduring utility to its holder . . . ." (Internal quotation marks omitted.) *State* v. *Vincent*, supra, 229 Conn. 174. The search warrant here sought a firearm, specifically "a pump action style shotgun," which qualifies as a durable good. See id., 174–75. "In contrast to perishable goods, durable goods can, by their nature, remain in a defendant's possession for a longer period of time." *United States* v. *Goodwin*, supra, 552 Fed. Appx. 545; see also *United States* v. *Hampton*, 760 Fed. Appx. 399, 403 (6th Cir. 2019).

Consistent with courts in other jurisdictions, our Supreme Court has recognized that firearms have an enduring utility to their holder. See, e.g., *State* v. *Carbone*, 172 Conn. 242, 251, 374 A.2d 215 ("people who own pistols generally keep them at home or on their persons" (internal quotation marks omitted)), cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977), and cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977); *United States* v. *Piloto*, 562 Fed. Appx. 907, 913 (11th Cir.) ("unlike narcotics, firearms are not consumable items; it would be reasonable to believe that [the defendant] continued to possess his gun in his home for at least 13 months"), cert. denied, 574 U.S. 913, 135 S. Ct. 291, 190 L. Ed. 2d 213 (2014); *United States* v. *Neal*, 528 F.3d 1069, 1074 (8th Cir. 2008) ("[i]nformation that someone is suspected of possessing firearms illegally is not stale, even several months later, because individuals who possess firearms

tend to keep them for long periods of time"); *United States* v. *Pritchett*, 40 Fed. Appx. 901, 906 (6th Cir.) ("[f]irearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time"), cert. denied, 537 U.S. 1023, 123 S. Ct. 532, 154 L. Ed. 2d 433 (2002).[6] In the present case, the continued utility of the defendant's firearm is particularly apparent considering K's sworn written statement, which provided that the defendant stated that he slept next to a firearm. As a result, the third factor supports a finding that the information was not stale.

All of the *Vincent* factors weigh against a claim of staleness. In light of the foregoing, we conclude that the passage of fourteen months between the date K took a photograph of the shotgun laying across the defendant's desk and the date that the search warrant was issued did not render the information in the search warrant affidavit stale. It was reasonable for the issuing

---

[6] The defendant also argues that "there still should be something in the affidavit . . . showing that a person is still in possession of the weapon." We conclude that, contrary to the defendant's contention, there existed evidence reasonably suggesting that the defendant still possessed the firearm. Pursuant to the laws governing the transfer of firearms, including General Statutes § 29-37a (d), certain authorization and documentation is required for the legal transfer of firearms. As described in the search warrant affidavit, a police officer conducted a check with the special licensing and firearms unit of the Department of Emergency Services and Public Protection to confirm whether the defendant had a history of an authorized transfer of "any long gun matching the description of the firearm seen in the [photograph] provided by [K]." However, the officer could not find evidence that the shotgun was lawfully transferred to or from the defendant. Therefore, the issuing court reasonably could have considered the information that a search of firearm transfer records revealed no sale as a circumstance from which it could be inferred that probable cause continued to exist. See *United States* v. *Rahn*, 511 F.2d 290, 293 (10th Cir.), cert. denied, 423 U.S. 825, 96 S. Ct. 41, 46 L. Ed. 2d 42 (1975); see also *State* v. *Carbone*, supra, 172 Conn. 251 (citing *United States* v. *Rahn*, supra, 292–93, as holding that "warrant to search for guns issued on information eighteen months old not stale when affidavit showed the defendant had said guns would appreciate in value if kept, had been seen making personal use of one gun, and search of records of area pawnshops revealed no sales by the defendant").

judge to believe, on the basis of that information, that there was a fair probability that the items sought to be seized would be found at the time that the search warrant was executed. Accordingly, we conclude that the court properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.