NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0636n.06
Filed: July 28, 2005

No. 04-5826

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **MARK STEPHEN LANCASTER**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:     KEITH, BATCHELDER, and COLE, Circuit Judges.

**R. GUY COLE, JR., Circuit Judge.**  Plaintiff-Appellant Mark Lancaster pleaded guilty to the possession of numerous unregistered machine guns in violation of 26 U.S.C. § 5861(d) and § 5871. In the district court, Lancaster moved to suppress evidence that he possessed the guns on the grounds that the search warrant was invalid. The district court denied the motion and this appeal ensued. For the following reasons, we **AFFIRM** the district court's denial of the motion to suppress evidence.

**I.**

On January 6, 2003, Special Agent Patrick W. Hand ("Agent Hand") appeared before Magistrate Judge Joe B. Brown to request the issuance of a search warrant for Lancaster's residence, located at 267 Page Drive, Mt. Juliet, Tennessee. Agent Hand submitted a five-page single-spaced

affidavit (the "Hand Affidavit") recounting his investigation of Lancaster, and the probable cause supporting the issuance of the warrant. The relevant terms of the Hand Affidavit are as follows.

On January 3, 2003, the Bureau of Alcohol, Tobacco and Firearms ("ATF") received an anonymous telephone call regarding Lancaster. The caller indicated that Lancaster: (1) possessed "machine guns and homemade explosives" at his house; (2) was "manic-depressive, unstable and a 'nazi buff'"; and (3) "had converted the Greenhill Baptist Church bus into a shooting range." After receiving the call, Agent Hand initiated his investigation.

Agent Hand determined that Lancaster had a Federal Firearms License ("FFL") as a collector of "curios and relics." Agent Hand further determined that Lancaster did not have a license under the National Firearms Act for the possession of machine guns. The issuance of an FFL for curios and relics does not entitle the licensee to possess machine guns under the National Firearms Act.

Agent Hand then traveled to Greenhill Baptist Church and discussed Lancaster with three confidential sources of information ("CSI"). CSI #1 indicated that he saw Lancaster shoot a "fully automatic machinegun approximately 2 years ago." The weapon was described as having a "round tubular front with a magazine well on the side of the weapon." This description was consistent with a "Sten machinegun," a type of hand-held British machine gun used during World War II. CSI #1 also indicated that "Lancaster was known to borrow a welding machine owned by the church." Welding machines are used to assemble Sten machine guns from parts kits.

CSI #2 stated that Lancaster had "taken the welding machine owned by the church home with him on several occasions."

CSI #3 stated that he and Lancaster had shot guns together five times in the past year. During each occasion he saw Lancaster shoot a fully automatic machine gun. CSI #3 also gave a description of a gun consistent with a Sten machine gun. CSI #3 also stated that the Sten machine gun had "weld marks on it and recognized the name of this firearm to be a Sten gun." CSI #3 further stated that he had helped Lancaster weld the Sten machine gun and that he had been to Lancaster's home most recently in November 2002. CSI #3 said that during the visit Lancaster admitted to owning "20-25 firearms and of these firearms 15 of which were machineguns by Lancaster's own admission." Lancaster told CSI #3 that he had welded the machine guns himself using the church welder. Lancaster further told CSI #3 that he would not sell the machine guns because he knew he would "get into trouble."

CSI #3 then drove with Agent Hand to Lancaster's home and indicated that all the firearms were stored in a room above the garage. CSI #3 specifically identified to Agent Hand the room in which the guns were located. Agent Hand then averred in his affidavit that in his own experience, an owner of firearms tends to keep them for a long time, and the owner usually stores the firearms in the residence to keep them secure, to allow easy maintenance, and to prevent corrosion and rust.

Based on this affidavit, Judge Brown issued the warrant on January 6, 2003. The search was executed on January 8, 2003. Fifteen machine guns were found in Lancaster's residence during the search as well as the church welding machine.

Lancaster moved to suppress the machine guns and the welding machine on the grounds that the search warrant and the Hand Affidavit were faulty. Shortly before the hearing on the motion, Lancaster learned that CSI #2 and the anonymous caller were the same person. Lancaster also

contended that CSI #2 was incorrect in claiming that Lancaster was unstable, a Nazi buff, or had turned the church bus into a shooting range. Lancaster argued that these statements showed that Agent Hand had recklessly submitted falsified information.

The district court denied the motion to suppress. The district court found that to the extent there was any false information in the Hand Affidavit it was not relevant to the finding of probable cause. The district court further held that Agent Hand had not engaged in any deliberate falsehoods with respect to the affidavit. This timely appeal ensued.

## II.

In an appeal of a denial of a motion to suppress, this Court reviews a district court's factual findings for clear error and its conclusion of law *de novo*. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004). Lancaster argues that the search warrant lacked probable cause on three grounds: (1) that the Hand Affidavit did not set forth facts sufficient to support probable cause; (2) that the Hand Affidavit contained false statements made with reckless disregard for the truth; and (3) that the allegations contained in the Hand Affidavit were stale.

### 1. *Probable Cause and Corroboration*

A search warrant affidavit must contain facts sufficient to support probable cause for the issuance of a warrant. *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996) ("For the magistrate to be able to properly perform this official function, the affidavit presented must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant."). Probable cause is defined as a "fair probability, given the totality of

the circumstances, that contraband or evidence of a crime will be found in a particular place."
*United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (internal quotes and citation removed).

Hearsay information may be included in a search warrant affidavit. However, "[w]hen confronted with hearsay information from a confidential informant or an anonymous tipster, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information." *United States v. Helton*, 314 F.3d 814, 819 (6th Cir. 2003). When dealing with a confidential informant, "if the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required." *Id.* at 820. Declarations as to the informant's reliability may not be necessary if the statements are corroborated by extrinsic information. *Id.* (noting that an anonymous source may be corroborated by extrinsic facts); *see also United States v. Sturmonski*, 971 F.2d 452, 457 (10th Cir. 1992) ("[T]here is no need for a declaration of the reliability of an informant when the informant's information is corroborated by other information."). Other federal courts have noted that consistency between the reports of two informants could be sufficient corroboration to support a finding of probable cause. *See United States v. Schaefer*, 87 F.3d 562, 566 (1st Cir. 1996) ("[C]onsistency between the reports of two independent informants helps to validate both accounts."); *United States v. Le*, 173 F.3d 1258, 1266 (10th Cir. 1999) (same); *United States v. Pritchard*, 745 F.2d 1112, 1121 (7th Cir. 1984) ("By telling consistent yet independent stories, the informants provide cross-corroboration, and enhance the reliability of the application as a whole.") (internal quotes and citation omitted).

Here, the confidential informants provided information that was consistent and cross-corroborative.  All three informants stated that Lancaster was the owner of at least one machine gun.  All the informants noted that Lancaster had used or borrowed the church welding machine.  CSI #1 and CSI #3 both gave physical descriptions of a Sten machine gun.  Furthermore, both CSI #1 and CSI #3 said that they witnessed Lancaster shoot a Sten machine gun.  CSI #3 further indicated that the Sten machine gun had weld marks on it.

The information provided by the three confidential informants was also corroborated by extrinsic evidence.  Agent Hand averred that he viewed three bullet holes in the church bus, which was consistent with CSI #2's assertion that Lancaster had turned the bus into a "shooting range."  Furthermore, Agent Hand drove with CSI #3 to Lancaster's home to corroborate the physical description of the house given by the informant.  Given this detailed and consistent information, the affidavit supported a finding of probable cause to conduct a search of Lancaster's residence for weapons.

2.      *Franks v. Delaware*, 438 U.S. 154 (1978)

Lancaster next argues that the search warrant is invalid under *Franks v. Delaware*, 438 U.S. 154 (1978).  In that case, the Supreme Court set forth the following test for challenging an affidavit on which a search warrant relies:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's

>  remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155-56.

Lancaster points to various purported errors in the Hand Affidavit to support the view that Agent Hand intentionally or recklessly included falsehoods in the affidavit. Lancaster first argues that the Hand Affidavit fails to mention that the anonymous caller and CSI #2 are the same person. Lancaster also argues that the information supplied by the anonymous caller was false—namely that Lancaster is unstable, is a Nazi buff, had turned the bus into a shooting range, and possessed homemade explosives.

The district court did not err in concluding that Agent Hand did not act with deliberate or reckless disregard for the truth. During the suppression hearing, Agent Hand testified that he included information regarding the anonymous call to show the reason for the ATF's initiation of an investigation of Lancaster. Agent Hand further indicated that at the time the ATF received the anonymous call, there was no way of knowing that the anonymous caller was the same person as CSI #2. This was only discovered after the investigation and in-person interviews were conducted.

The district court further noted that some of the contested information supplied by CSI #2 was partly true. Lancaster admitted that he had participated in World War II re-enactments and had played the part of a Nazi soldier. Lancaster further admitted that he had fired a weapon inside the church bus, leaving a bullet hole in its wall.

Lancaster is also unable to establish that any alleged misstatements were necessary to the finding of probable cause. First, the information that Lancaster casts as inaccurate was not particularly relevant to Agent Hand's investigation. As testified by Agent Hand, the investigation focused on whether Lancaster possessed machine guns without an appropriate license under the National Firearms Act, and was not focused on Lancaster's alleged Nazi affiliation or his mental state. Second, the alleged lack of credibility of CSI #2 did not affect the information supplied by the other confidential sources. CSI #1 and CSI #3 both consistently indicated that Lancaster had fired a Sten machine gun in their presence and had borrowed the church welding machine, which he used to fabricate the weapons.

    *3.    Staleness*

Lancaster next argues that the information supplied in the Hand Affidavit was stale. A staleness determination depends on the "circumstances of each case." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). In determining whether the information in an affidavit is stale, this Court has previously noted the following factors:

> [T]he function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate. Rather, the question of staleness depends on the inherent nature of the crime. Instead of measuring staleness solely by counting the days on a calendar, courts must also concern themselves with the following variables: the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?) . . . .

*Id.* at 923 (internal quotes and citations omitted).

In light of these factors, the information in the Hand Affidavit cannot be considered stale. Lancaster correctly notes that the Hand Affidavit indicates that CSI #1 witnessed Lancaster fire the Sten machine gun "two years ago." However, such information is not stale, given that firearms are not perishable items. Indeed, Agent Hand noted in the affidavit that based on his personal experience, "those who own and possess firearms generally maintain them for long periods of time."

Additionally, the information provided by CSI #1 corroborates the information provided by CSI #3. In the Hand Affidavit, CSI #3 notes that he visited Lancaster's residence as late as November 2002, which was only two months prior to the issuance of the warrant on January 6, 2003. During that visit, CSI #3 viewed Lancaster's machine guns, and Lancaster admitted to possessing fifteen of them. Given the durable nature of firearms and Lancaster's admission to CSI #3 in November 2002 that he possessed machine guns, such information is not stale for purposes of the warrant.

## III.

For these reasons, we **AFFIRM** the district court's denial of the motion to suppress evidence.