[Cite as *State v. McConico*, 2024-Ohio-5657.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230116 |
| | | TRIAL NO. B-2105040-B |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| DEXTON MCCONICO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 4, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp*, for Defendant-Appellant.

**BOCK, Presiding Judge.**

**{¶1}** Defendant-appellant Dexton McConico challenges the trial court's denial of his suppression motion, arguing that cocaine seized from a vehicle he was driving was the fruit of an unconstitutional search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

**{¶2}** An officer initiated a traffic stop on a vehicle driven by McConico after the officer ran the vehicle's license plate and discovered that the registered owner of the vehicle had a suspended license. As the officer approached the vehicle, the officer recognized that McConico was not the registered owner of the vehicle. While the sole basis for the officer's stop no longer existed, the officer prolonged the traffic stop and asked for McConico's license. The officer eventually discovered that McConico had an active warrant for his arrest, detained him, and later found drugs in the vehicle.

**{¶3}** In a fractured 5-2 decision, the Supreme Court of Ohio recently upheld a stop occurring under substantially similar circumstances. *See State v. Dunlap*, 2024-Ohio-4821. We accordingly hold that the officer in this case did not violate McConico's Fourth Amendment rights.

## I. Factual and Procedural History

### a. The stop

**{¶4}** In September 2021, Deputy Caddell of the Hamilton County Sheriff's Office was patrolling the Lincoln Heights neighborhood when he observed a BMW with which he was not familiar parked at the end of a street. When Caddell later saw the vehicle driving on the road, he searched the vehicle's license plate number and found that the registered owner, Leevell Travis—who is female—had a suspended license. Caddell initiated a traffic stop.

**{¶5}** Caddell approached the passenger side window of the vehicle and

encountered the driver, McConico—who is male—and another male passenger. Caddell testified at the suppression hearing that he could not see the driver until he reached the side of the car. Caddell's bodycam footage was admitted into evidence. In the footage, Caddell explained to McConico that he pulled over the vehicle because the registered owner was unlicensed. Caddell continued, "I see that . . . you're not her now." McConico responded, "Oh, right." Caddell asked McConico, "[W]ho is the registered owner to you?" McConico answered, "Leevell Travis." Caddell continued questioning McConico, asking, "[H]ow do you know her?" McConico confirmed that Travis was a family member.

{¶6} Caddell then asked McConico if he had his driver's license. McConico admitted that he did not have a license on him but stated that he did have a valid license. Caddell responded, "Okay, well as long as you are valid." McConico's passenger then complained about the stop. Caddell explained to McConico and the passenger that he had stopped the vehicle because the registered owner was "not valid" and he "was now verifying to make sure that [McConico] is valid." At the suppression hearing, Caddell testified that McConico and his passenger "just seemed nervous."

{¶7} Caddell asked McConico for his name, date of birth, address, and social security number. McConico provided a fake name and stated he did not know his social security number. Caddell ran that information and determined that McConico had given him a fake name. After McConico provided his real name, Caddell discovered that there was an active warrant for his arrest.

{¶8} Caddell arrested both men. He searched the vehicle and found a white powdery substance, which McConico later admitted was cocaine. The State indicted McConico on a possession-of-cocaine charge. McConico pleaded not guilty.

### b. The trial court denied McConico's motion to suppress

{¶9} McConico moved to suppress the evidence obtained during the stop. After a hearing, the trial court denied the motion. It found that Caddell 1) became suspicious of the BMW because it was not familiar to him and it was parked in a high-crime, high-drug trafficking area, 2) ran the license plate to "conduct an investigation" as "part of his duties as a Narcotics Investigator," and 3) testified that McConico had made a left turn without signaling as Caddell awaited information on the license plate. The court determined that Caddell's request for McConico's license did not violate McConico's constitutional rights as Caddell had probable cause to stop the BMW and investigate whether McConico had a valid license and "had legal authority to [operate] the [BMW]."

{¶10} McConico later withdrew his not-guilty plea and pleaded no contest to possession of cocaine. The trial court found McConico guilty and imposed two years of community control. McConico timely appealed.[1]

### II. Analysis

{¶11} McConico's assignment of error argues that the trial court erroneously denied his suppression motion because once Caddell saw McConico was not the unlicensed owner of the vehicle, reasonable suspicion of criminal activity evaporated. McConico asserts that the extended detention and subsequent search of his person and vehicle violated his Fourth and Fourteenth Amendment rights guaranteed by the United States Constitution and Article I, Section 14 of the Ohio Constitution.[2]

---

[1] In October 2023, we stayed the proceedings in this case pending the Supreme Court of Ohio's decision in *State v. Dunlap*, 2024-Ohio-4821. The Court released its decision in *Dunlap* on October 9, 2024, and we subsequently lifted our stay and resubmitted the case for decision.

[2] While McConico asserts that the search violated his rights under both the Federal and Ohio Constitutions, he has "framed [his] argument under the Fourth Amendment and [has] failed to assert that the Ohio Constitution provides any greater protection," and we limit our analysis to whether McConico's rights under the Fourth Amendment were violated. *See Dunlap* at ¶ 15.

### A. Standard of review

**{¶12}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Cheatham*, 2021-Ohio-2495, ¶ 8 (1st Dist.). In considering a motion to suppress, the trial court is in the best position to decide the facts and to evaluate the credibility of the witnesses. *State v. Winfrey*, 2008-Ohio-3160, ¶ 19 (1st Dist.). We must accept the trial court's factual findings if they are supported by competent and credible evidence. *Cheatham* at ¶ 8. Yet, we must independently determine whether the facts satisfy the applicable legal standard. *State v. Calo-Jimenez*, 2023-Ohio-2562, ¶ 27 (1st Dist.), quoting *State v. Thyot*, 2018-Ohio-644, ¶ 17 (1st Dist.); *see Ornelas v. United States*, 517 U.S. 690, 699 (1996) ("determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal").

### B. Fourth Amendment and State v. Dunlap

**{¶13}** The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Dunlap*, 2024-Ohio-4821, at ¶ 15; *see Maryland v. Buie*, 494 U.S. 325, 331 (1990). Warrantless searches are per se unreasonable unless an exception applies. *State v. Ward*, 2017-Ohio-8141, ¶ 13. The State bears the burden of establishing the validity of a warrantless search. *Id.*

**{¶14}** An officer may validly initiate a traffic stop where the officer learns that the registered owner of the vehicle has a suspended license and the officer "lacks information negating an inference that the owner is the driver of the vehicle." *Kansas v. Glover*, 589 U.S. 376, 378 (2020). There is no dispute that Caddell validly initiated the traffic stop. The issue is whether Caddell violated McConico's Fourth Amendment rights by asking him for his license after Caddell saw that McConico was not the

unlicensed registered owner.

**{¶15}** In *Dunlap*, the Supreme Court of Ohio, in a 5-2 decision, held that when an officer stops a car due to its registered owner being unlicensed, and subsequently sees that the driver is not the unlicensed registered owner, the officer may ask for the driver's license. *Dunlap* at ¶ 1-3.

**{¶16}** In *Dunlap*, an officer learned that the registered owner of a vehicle, a white female, had a suspended license. *Dunlap*, 2024-Ohio-4821, at ¶ 4. The officer initiated a traffic stop and saw that the driver of the vehicle was a black male, and Dunlap was in the passenger seat. *Id.* at ¶ 5.

**{¶17}** The officer explained that he had stopped the vehicle because the owner had a suspended license, and the driver stated that Dunlap had "court for that." *Id.* at ¶ 6. The officer then asked the driver if his driver's license was valid. *Id.* The driver responded, "I believe I'm valid. If not, she's valid." *Id.* When asked for his license, the driver instead provided a state-issued identification card. *Id.* at ¶ 7. The officer stated, "If you're valid, you guys are good to go." *Id.* The officer eventually learned that the driver's license was suspended, searched the vehicle, and found a weapon. The trial court denied a motion to suppress, the Eleventh District reversed that decision, and the State appealed. *Id.* at ¶ 3.

**{¶18}** A divided Supreme Court of Ohio reversed the Eleventh District and reinstated Dunlap's conviction. *Dunlap* at ¶ 3. The Court held that the vehicle being registered to an unlicensed driver provided reasonable suspicion to support the initial stop. *See Glover*, 589 U.S. at 378. The issue was whether the officer's subsequent questioning of the driver was permissible after the officer determined that the driver was not the vehicle's owner. *Dunlap* did not produce a majority decision.

### 1) *The Dunlap plurality*

**{¶19}** A three-justice plurality held that the officer's questioning was permissible under *Rodriguez v. United States*, 575 U.S. 348, 348 (2015). *Dunlap*, 2024-Ohio-4821, at ¶ 18. The *Dunlap* plurality explained that *Rodriguez* "held that 'the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, . . . and attend to related safety concerns.'" *Id.* at ¶ 19, citing *Rodriguez* at 354. The *Dunlap* plurality stated that *Rodriguez* "explained that '[b]eyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop."'" *Id.*, quoting *Rodriguez* at 355, quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). These "ordinary inquiries" include checking the driver's license, the vehicle's registration and insurance status, and whether the driver has outstanding warrants. *Id.* "Actions outside the mission would cause the stop to become unlawful if they '"measurably extend the duration of the stop."'" *Id.*, quoting *Rodriguez* at 355, quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

**{¶20}** Based on *Rodriguez*, the plurality held that the officer's asking the driver, "[A]re you valid?" was permissible as an "ordinary inquiry" of the stop. *Id.* at ¶ 20. The plurality held that this question fell within the mission of the initial stop, which the plurality broadly described as "ensuring that the vehicle was being operated by a properly licensed driver." *Id.* at ¶ 20-21. The plurality concluded "that when an officer permissibly engages in a traffic stop based on a reasonable suspicion that a car is not being operated by a validly licensed driver, the officer may ask the driver of the car if he has a valid license." *Id.* at ¶ 22.

**{¶21}** The plurality distinguished *State v. Chatton*, 11 Ohio St.3d 59 (1984), a case cited by the dissent and the Eleventh District. In *Chatton*, the Court held that an

7

officer lacked reasonable suspicion to ask for a driver's license when, while approaching a vehicle that the officer had stopped for failing to have a license plate, the officer saw that there was a temporary tag on the back of the car. *Chatton* at 60.

**{¶22}** The *Dunlap* plurality limited *Chatton* to the issue of a vehicle's registration status rather than whether the driver of a car was licensed. *Dunlap*, 2024-Ohio-4821, at ¶ 27. In *Chatton*, the *Dunlap* plurality explained, "once the officer saw the temporary tag, the entire mission of the stop—confirming that the car was registered—was completed." *Id.* But because the officer's mission in *Dunlap* was "to ensure that a licensed driver was behind the wheel," that mission was not complete upon the officer's observing that the driver was not the registered owner. *Id.* at ¶ 28. Instead, the officer's mission continued until the officer had "ascertained whether the driver of the vehicle had a valid license." *Id.* The plurality further observed that *Rodriquez* had superseded *Chatton* to the extent it suggested that officers could not ask for a driver's licensed following a lawful traffic stop. *Id.* at ¶ 29.

### 2) Justice Stewart's concurrence

**{¶23}** Justice Stewart concurred in judgment only and disagreed that *Rodriguez* resolved the case. *Dunlap* at ¶ 37-38 (Stewart, J., concurring in judgment only). Justice Stewart explained that *Rodriguez* did not involve the question of whether an officer's reasonable suspicion that a car is being driven by an unlicensed driver is terminated "when the officer realized as he approached the vehicle, based on the outward appearance of the driver, that the car was not being driven by its owner." *Id.*

**{¶24}** Justice Stewart found the case more like *State v. Orr*, 91 Ohio St.3d 389, 390 (2001), in which the Court held that a driver's license checkpoint was permissible under the Fourth Amendment. *Dunlap* at ¶ 39. In *Orr*, the Court explained that the

8

constitutionality of checkpoints turns on three factors: "(1) the particular checkpoint's intrusion on privacy, (2) the state's interest in maintaining the checkpoint, and (3) the extent to which the checkpoint advances the state interest." *Orr* at 392-393.

**{¶25}** Justice Stewart found the officer's questioning in *Dunlap* to be similar "to the minimal intrusion involved in advancing the state's interest [in ensuring that only licensed drivers are driving vehicles]" in *Orr*. *Dunlap*, 2024-Ohio-4821, at ¶ 40. Justice Stewart found it important that the officer's asking, "Are you valid," was limited to determining that a licensed driver was operating the vehicle. *Id.* Justice Stewart further noted that the United States Supreme Court has held that the Fourth Amendment "prohibits arbitrary police stops for the purpose of checking a driver's license and registration" in *Delaware v. Prouse*, 440 U.S. 648 (1979). *Id.* Justice Stewart concluded that the officer's question in *Dunlap* was not arbitrary—and therefore permissible—because the officer initially had reasonable suspicion to initiate the stop. *Id.*

### 3) Justice Donnelly's concurrence

**{¶26}** Also concurring in judgment only, Justice Donnelly argued that the case warranted a narrower holding than the one suggested by the plurality decision. *Dunlap* at ¶ 31 (Donnelly, J., concurring in judgment only). Justice Donnelly viewed the plurality as holding "that a police officer may extend any valid traffic stop to check the driver's license, even in the absence of continued reasonable suspicion." *Id.* Justice Donnelly reasoned instead that,

> [W]hen a police officer has reasonable suspicion to stop a vehicle and that suspicion is not dispelled until the officer is standing next to the driver's window, the officer may briefly interact with the driver without violating the Fourth Amendment. And if, as here, the driver's

statements give rise to a reasonable suspicion that the driver does not

have a valid license, the officer may extend the stop to check the validity

of the driver's license.

*Id.*

**{¶27}** Justice Donnelly relied on *State v. Robinette*, 80 Ohio St.3d 234, 240 (1997), for the proposition that "when a vehicle has been properly stopped, a police officer may briefly question the vehicle's occupants—even after the purpose of the stop has ended—under certain circumstances." *Dunlap* at ¶ 33. Justice Donnelly explained that the *Robinette* court "indicated that a suspicionless extension of a traffic stop is permissible so long as the detention is brief, the questioning is minimally intrusive, and the questioning serves the public interest." *Id.* at ¶ 34.

**{¶28}** Based on *Robinette*, Justice Donnelly concurred in the judgment, noting that after validly stopping the car, the officer in *Dunlap* "prolonged the suspicionless portion of the stop for a mere ten seconds and asked only two questions: 'How's it going?' and 'Are you valid?' The latter question served the same interest that justified the stop in the first place: to keep suspended drivers off Ohio roads." *Dunlap*, 2024-Ohio-4821, at ¶ 35. And because the officer received a suspicious answer to his question, the officer then had reasonable suspicion that the driver was not licensed and could permissibly request the driver's license. *Id.* at ¶ 32, 35.

### C. Application of *Dunlap*

**{¶29}** A plurality opinion is "not binding authority." *Nascar Holdings, Inc. v. Testa*, 2017-Ohio-9118, ¶ 18; *see Hedrick v. Motorists Mut. Ins. Co.*, 22 Ohio St.3d 42, 44 (1986), *overruled on other grounds by Martin v. Midwestern Group Ins. Co.*, 1994-Ohio-407 ("This court, however, does not find this language in *Ady* to be controlling. *Ady* was a plurality opinion. Only the syllabus received the requisite four

votes. Thus, the only law emanating from *Ady* is contained in the syllabus."); *see also Kraly v. Vannewkirk*, 69 Ohio St.3d 627, 633 (1994). But a court may rely on a plurality opinion when it finds the opinion persuasive. *Testa* at ¶ 18.

**{¶30}** *Dunlap* was a plurality opinion with no syllabus. Therefore, we are left with no binding authority from the case. But given the disposition of *Dunlap*, we are convinced that affirmance is warranted in this case. Though the *Dunlap* plurality and Justice Stewart relied on different reasoning, both arrived at the same general conclusion: an officer who has lawfully stopped a vehicle based on reasonable suspicion that the vehicle is being operated by an unlicensed driver can ask the driver for the driver's license. Whether because the request is part of the "ordinary inquiries" of a traffic stop under the plurality's reasoning, or because the request is minimally intrusive and not arbitrary according to Justice Stewart, the result would be the same—the stop is valid. Additionally, given the factual similarities between this case and *Dunlap*, affirmance is warranted under Justice Donnelly's narrower concurrence as McConico's statement that he did not have his license on him provided Caddell with reasonable suspicion that McConico was unlicensed. *See State v. Martina*, 2001 Ohio App. LEXIS 5943, *7 (2d Dist. Dec. 28, 2001) ("Failure to produce a valid driver's license is a lawful reason to detain a driver in order to ascertain whether the driver is, indeed, licensed."); *see also* R.C. 4507.35(A) ("A person's failure to furnish satisfactory evidence that the person is licensed . . . when the person does not have the person's license on or about the person's person shall be prima-facie evidence of the person's not having obtained a driver's license.").

**{¶31}** Applying *Dunlap*, we hold that McConico's Fourth Amendment rights were not violated, and the trial court properly denied his motion to suppress. We overrule McConico's assignment of error.

### *D. Conclusion*

**{¶32}** For the foregoing reasons, we overrule McConico's assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.