# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240565 |
| | | TRIAL NO. | B-2402300 |
| Plaintiff-Appellant, | : | | |
| vs. | : | | |
| DESHAWN JENKINS, | : | *JUDGMENT ENTRY* | |
| Defendant-Appellee. | : | | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is reversed and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**
**Enter upon the journal of the court on 9/24/2025 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *State v. Jenkins*, 2025-Ohio-4447.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240565 |
| | | TRIAL NO. | B-2402300 |
| Plaintiff-Appellant, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| DESHAWN JENKINS, | : | | |
| Defendant-Appellee. | : | | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: September 24, 2025

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Derek W. Gustafson*, for Defendant-Appellee.

**Moore, Judge.**

**{¶1}** Appellant State of Ohio appeals the trial court's judgment granting defendant-appellee Deshawn Jenkins' motion to suppress evidence of a gun, cocaine, fluorofentanyl, flouroacetyl fentanyl, and heroin that was found in a bag that Jenkins was carrying when he met with his parole officer, Officer Samuel Gropp, on May 15, 2024.

### I. Factual and Procedural History

### Jenkins' Girlfriend Contacts Gropp

**{¶2}** After serving time for a 1994 aggravated-robbery conviction, Jenkins was released from prison in January 2023 and placed on postrelease-control ("PRC") supervision. Jenkins registered his girlfriend's address as his residence.

**{¶3}** Jenkins' girlfriend contacted Gropp "sometime around December of [20]23" and informed him that Jenkins had slashed her tires. Under the terms of his PRC, Jenkins was prohibited from having any knives. So, having a knife and using it to slash the girlfriend's tires would have been, among other things, a violation of the terms of his PRC. In addition, the girlfriend explained that Jenkins "hangs out downtown with a beige bag" and carries a "black gun" in it. Jenkins was also prohibited from having a gun under the terms of his PRC.

**{¶4}** Following the girlfriend's tip, Gropp issued a warrant for Jenkins' arrest. Gropp was present when federal marshals picked Jenkins up on the warrant at the girlfriend's house on December 22, 2023. Gropp did not see Jenkins with a bag when he was arrested, and Jenkins' girlfriend did not give officers permission to search the home. Jenkins was held in jail pending the hearing on the slashed-tires allegation.

### Jenkins is released from jail on high supervision.

**{¶5}** As the girlfriend failed to attend the hearing on her allegation that

Jenkins slashed her tires, Jenkins was released from jail on high supervision on January 11, 2024, which required him to report to Gropp once a month for randomly scheduled meetings.

{¶6}	Gropp scheduled a meeting with Jenkins downtown at the Hamilton County Department of Job and Family Services building on May 15, 2024. Gropp testified that, when Jenkins arrived, the first thing he saw was a "beige bag." Gropp searched the bag and found a black gun inside. Gropp secured Jenkins in a car until police arrived.

### Jenkins is indicted.

{¶7}	On May 23, 2024, Jenkins was indicted for one count of carrying concealed weapons, a fourth-degree felony, in violation of R.C. 2923.12(A)(2), one count of having weapons while under disability, a third-degree felony, in violation of R.C. 2923.13(A)(3), two counts of possession of a fentanyl-related compound, fourth-degree felonies, in violation of R.C. 2925.11(A), one count of possession of heroin, a felony of the fourth degree, in violation of R.C. 2925.11(A), and one count of possession of cocaine, a fifth-degree felony, in violation of R.C. 2925.11(A).

### Jenkins moves to suppress evidence from the search.

{¶8}	Jenkins filed a motion to suppress, arguing Gropp lacked reasonable suspicion to search him because the tip Gropp acted on was stale.

{¶9}	At the hearing on the motion to suppress, Jenkins stipulated that he was on PRC when Gropp searched him, the bag he was carrying contained a gun, and he had admitted when he was arrested that he knew the gun was in the bag. Jenkins, however, denied knowing that drugs were in the bag.

{¶10}	Gropp testified that he never saw Jenkins with a bag matching the description from the tip between the time when Jenkins was released from jail on high

supervision on January 11, 2023, and the time he saw Jenkins in May 2024. Gropp also explained that he did not search Jenkins during this period. Gropp recalled that, when he saw Jenkins carrying a bag on May 15, 2024, he informed his partner that there were allegations that Jenkins might have something in the bag and he was going to search it. Gropp testified that he told Jenkins that he was going to search the bag out of concern for his personal safety, and Jenkins did not object to the search.

{¶11} On cross-examination, Gropp testified that the bag he saw Jenkins with at the May 15 meeting was a Louis Vuitton bag that was dark brown with "other colors" and "was more checkered," but that the bag looked "beige" to him. Gropp acknowledged that he searched the bag based on the tip the girlfriend gave five months prior.

{¶12} Jenkins argued the search of his bag was unconstitutional because Gropp had no reasonable grounds to believe he was not complying with the terms of PRC. The State responded that the opportunity to search pursuant to the tip did not present itself until May 15, 2024, when Gropp searched the bag Jenkins was carrying.

{¶13} The trial court took the matter under advisement. It noted on the record that it would not treat the issue as a consensual search, as the State argued, thus the issue of consent would not be addressed. The court stated that, instead, it would focus on Jenkins' claim that the reason for the search became stale with the passage of time and intervening events.

{¶14} On October 2, 2024, the court issued an entry granting Jenkins' motion to suppress. This appeal followed.

## II. Analysis

{¶15} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the

trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. *Id.* A reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support the trial court's findings. *State v. Calo-Jiminez*, 2023-Ohio-2562, ¶ 27 (1st Dist.).

{¶16} We review a trial court's legal conclusions on a motion to suppress de novo. *Id.* Accepting the trial court's factual findings as true and without deference to the conclusion of the trial court, the appellate court must independently determine whether the facts satisfy the applicable legal standard. *Id.*

### A. *The trial court erred in granting Jenkins' motion to suppress.*

**The trial court's entry and its failure to state its findings of fact.**

{¶17} The State asserts the trial court summarily granted Jenkins' motion to suppress without issuing findings of fact or conclusions of law. Crim.R. 12(F) provides that a trial court may adjudicate a motion based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record. *Id.*

{¶18} A trial court, however, is not required to make findings of fact under Crim.R. 12(F) when the evidence is undisputed. *State v. Adams*, 2015-Ohio-3954, ¶ 114. In the instant matter, neither party disputes the facts. *See State v. Williams*, 2003-Ohio-2647, ¶ 7, fn. 2 (8th Dist.), citing *State v. Benner*, 40 Ohio St.3d 301, 317-318 (1988) (The trial court's failure to issue findings as required to by Crim.R. 12(F) is not prejudicial error where findings are not requested by a party and the record provides a reviewing court with a sufficient basis to review the assignments of error.). Here, because the evidence is undisputed, the question as to whether the tip Gropp acted on was stale, is a question of law. Accordingly, the State's assignment of error may be

6

reviewed in the absence of the trial court's explicit factual findings.

**Crim.R. (12)F required the State to request findings of fact in the absence of such findings.**

**{¶19}** The State should have moved the court to state its essential findings of fact in support of its judgment if such findings were unclear to it. CrimR. 12(F); *see Adams* at ¶ 112 (Crim.R. 12(F) is not self-executing; if findings of fact are not requested, any error is forfeited.); *Bryan v. Knapp*, 21 Ohio St.3d 64, 65 (1986) (The trial court must, upon request, state essential findings of fact so the reviewing court can properly consider the propriety of the trial court's ruling.).

**{¶20}** In the instant matter, the State did not move the trial court to state its essential findings in support of granting Jenkins' motion. The State's challenge to the trial court's failure to include findings in its entry is, therefore, forfeited.

**The Constitutional Protections Against Unreasonable Searches**

**{¶21}** The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals against unreasonable searches and seizures by the government where an individual has a reasonable expectation of privacy. *See State v. Evenson*, 2022-Ohio-1336, ¶ 31 (1st Dist.); *Smith v. Maryland*, 442 U.S. 735, 740 (1979). An expectation of privacy exists where an individual has manifested a subjective expectation of privacy and that expectation is one that society recognizes as reasonable. *State v. Barnes*, 2017-Ohio-7284, ¶ 9 (3d Dist.); *Smith* at 740. While the Fourth Amendment does not specifically provide that unlawful searches and seizures will result in the suppression of evidence, the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment. *Barnes* at ¶ 9; *see Mapp v. Ohio*, 367 U.S. 643, 649 (1961).

**Reasonable grounds for warrantless search of a person on PRC.**

7

**{¶22}** Warrantless searches are per se unreasonable unless an exception applies. *State v. McConico*, 2024-Ohio-5657, ¶ 13 (1st Dist.). The State bears the burden of persuasion to show the validity of a warrantless search. *Id.*; *Chimel v. California*, 395 U.S. 752, 762 (1969).

**{¶23}** A warrantless search of a person being supervised under PRC is reasonable under the Fourth Amendment if it satisfies either of "two distinct doctrinal frameworks." *United States v. Sharp*, 40 F.4th 749, 752-753 (6th Cir. 2022), quoting *United States v. Herndon*, 501 F.3d 683, 687-688 (6th Cir. 2007). The first of such frameworks is the "special needs" test set out in *Griffin v. Wisconsin*, 483 U.S. 868, 880 (1987). Under the test established in *Griffin*, a search of a person under PRC supervision is reasonable if it is conducted in accordance with a constitutional state law authorizing warrantless searches. *Sharp* at 752-753. R.C. 2967.131(C), which governs the conditions of PRC and permits the search of such persons with or without a warrant, satisfies the Fourth Amendment's reasonableness requirement. *Id.*; *see United States v. Loney*, 331 F.3d 516, 521 (6th Cir. 2003) (R.C. 2967.131(C)(1), which authorizes warrantless searches of persons under PRC supervision, has passed "constitutional muster.").

**{¶24}** Second, under R.C. 2967.131(C)(1)(a), parole officers have authority to conduct warrantless searches of a person, residence, vehicle, or other property of offenders released on PRC supervision if the officer has "reasonable grounds to believe" the offender "is not complying with the terms and conditions" of his PRC. *See State v. Benton*, 82 Ohio St.3d 316, 319 (1998).

**{¶25}** Reasonableness is measured by the totality of the circumstances by considering (1) the position of the offender who is under PRC supervision on the "continuum" of criminal punishments as they do not enjoy the same level of liberty as

the average citizen, (2) the terms of the search condition communicated to the person, and (3) the State's overwhelming interest in supervising the person. *Sharp* at 753, citing *Samson v. California*, 547 U.S. 843, 850-853 (2006); *see State v. Currie*, 2025-Ohio-670, ¶ 26 (1st Dist.). Whether a search is reasonable depends on the facts and circumstances of each case. *State v. Leak*, 2016-Ohio-154, ¶ 14.

**{¶26}** The reasonable-grounds standard does not mandate the level of certainty required to establish probable cause. *Currie* at ¶ 26, quoting *State v. Helmbright*, 2013-Ohio-1143, ¶ 21 (10th Dist.). Reasonable grounds exist if the information known to the officer establishes a reasonable likelihood that a search will yield evidence of a violation. *Id.* at ¶ 26. It requires more than a mere inchoate and unparticularized suspicion or hunch and hinges on the content of information possessed by an officer and its degree of reliability. *Id.* at ¶ 26, 28, citing *Navarette v. California*, 572 U.S. 393, 397 (2014), quoting *Alabama v. White*, 496 U.S. 325, 330 (1990).

**{¶27}** A reliable tip, standing alone, may provide reasonable grounds to justify a search. *City of Parma v. Coyne*, 2024-Ohio-3192, ¶ 20-21 (8th Dist.); *see Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999) (a telephone tip can create reasonable suspicion justifying an investigative stop if the tip has sufficient indicia of reliability based on the weight and reliability of that tip). Where an informant's tip is relied upon, the informant's veracity, reliability, and basis for knowledge must be assessed under the totality of the circumstances to determine whether the tip establishes reasonable suspicion. *State v. Hamilton*, 2017-Ohio-8140, ¶ 13 (1st Dist.), citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983).

**{¶28}** When judging the reliability of an informant's tip, courts often distinguish between three categories of informants: (1) an anonymous informant, (2)

a known informant (someone from the criminal world who has provided previous reliable tips), and (3) an identified citizen informant. *In re J.T.*, 2023-Ohio-2695, ¶ 21 (1st Dist.). Although an identified citizen informant may be considerably more reliable than an anonymous informant, the categorization of the informant does not determine the outcome of the case; rather, it is just one element in the totality of the circumstances. *Id.* The Ohio Supreme Court has said that an identified citizen informant may be highly reliable; therefore, rigorous scrutiny of the basis of his or her knowledge is unnecessary. *Hamilton* at ¶ 14.

{¶29} The State asserts that Gropp had reasonable grounds to search Jenkins' bag based on the girlfriend's phone call.[1] It cites to *Griffin*, 483 U.S. at 880, in support of its argument that the tip was reliable. In discussing Wisconsin's parole rules as they relate to searches, *Griffin* states:

> The rule provides that an officer should consider a variety of factors in determining whether "reasonable grounds" exist, among which are information provided by an informant, the reliability and specificity of that information, the reliability of the informant (including whether the informant has any incentive to supply inaccurate information), the officer's own experience with the probationer, and the "need to verify compliance with rules of supervision and state and federal law."

*Griffin* at 871.

{¶30} The State argues the trial court evaluated the case for "probable cause" instead of "reasonable grounds" to search. Jenkins, however, argued at the hearing that Gropp did not have reasonable suspicion to search the bag. The State in turn

---

[1] The State also relies on Gropp's testimony that Jenkins' mother might have also informed Gropp that Jenkins was in the downtown area carrying a gun.

argued that reasonable suspicion did exist. The trial court explained the issue was "whether or not there was reasonable grounds to conduct the search." Thus, contrary to the State's assertion, the record shows that the trial court neither undertook a probable-cause analysis nor made its decision based on whether Gropp had probable cause to search.

### Reasonable grounds existed for Gropp to search Jenkins.

{¶31} Here, the trial court improperly concluded that reasonable grounds did not exist. While it is possible that the girlfriend had an ulterior motive in giving Gropp the tip while alleging Jenkins had slashed her tires—particularly when she failed to appear at the hearing on her slashed-tires allegation—the tip was nonetheless reliable, and it established a reasonable likelihood that Gropp would discover that Jenkins was violating the terms of his PRC. Unlike in *Currie*, here, the tip was not anonymous. Instead, the tip came from Jenkins' live-in girlfriend at the time. And the tip was specific as to both the color of the bag and the gun. Therefore, under the totality of the circumstances, the tip established reasonable grounds for Gropp to search the bag.

{¶32} Further, Jenkins was on PRC on a gun-related conviction, and had a history of drug convictions, when he picked up the gun and drug charges at issue in this case. Under the totality of the circumstances, the tip had sufficient indicia of reliability to provide reasonable suspicion for Gropp to search the bag, notwithstanding, as discussed below, the passage of five months.

### The tip was not stale.

{¶33} As an aside, the State asserts that staleness usually only applies where probable cause is the standard. The State, however, failed to develop this argument and did not cite any authority to support its position. We therefore do not address the State's argument in that regard.

**{¶34}** No arbitrary time limit dictates when information becomes stale. *State v. Griffin*, 2024-Ohio-1699, ¶ 23 (1st Dist.), citing *State v. Martin*, 2021-Ohio-2599, ¶ 14 (1st Dist.). The test is whether the alleged facts justify the conclusion that evidence remains to be found on or in the location to be searched. *Id.* Evidence generally becomes stale when enough time has passed such that there is no longer a sufficient basis to believe that the items to be seized are still on or in the area to be searched. *Id.*; *see State v. Rieves*, 2018-Ohio-955, ¶ 31 (8th Dist.). The staleness of evidence depends on the circumstances of each case. *Id.*

**{¶35}** In many cases, the passage of time and other factors would support at least a suspicion that the tip could have been stale. Here, Gropp testified that Jenkins' possession of a gun violates the terms of his PRC, and Gropp had at least five occasions over five months to search Jenkins based on the allegation that he was carrying a gun.

**{¶36}** Gropp, however, testified that Jenkins did not carry a bag in their previous meetings, and it was not until Gropp met Jenkins downtown on May 15, 2024, that he saw Jenkins carrying a bag like the one described in the tip. Thus, even after five months, there remained a reasonable likelihood that Gropp would find a gun in the bag Jenkins brought to the meeting because the tip was made by a reliable informant and the bag Jenkins had with him met the description given in the tip. *See United States v. Lancaster*, 145 Fed.Appx. 508, 512-513 (6th Cir. 2005) (Information contained in an affidavit was not stale two years after appellant was seen firing a machine gun "given that firearms are not perishable items."); *United States v. Vanderweele*, 545 Fed.Appx. 465, 469-470 (Where appellant argued that informant's statement that appellant possessed a silencer went stale by the time the search occurred seven months later, the Sixth Circuit held that a silencer is like a gun which is easily transferrable and commonly kept by its owner for a long time, and a gun is an

"apt simile" for a silencer.).

**{¶37}** Based on our independent review of the record, we hold it was not unreasonable for Gropp to believe a gun would be found in the bag Jenkins brought to the meeting and which Gropp saw for the first time after receiving the tip.

**{¶38}** Accordingly, we sustain the State's assignment of error.

### III.  Conclusion

**{¶39}** Because the trial court erred in granting Jenkins' motion to suppress, we reverse the trial court's judgment and remand this cause for further proceedings.

Judgment reversed and cause remanded.

**CROUSE, P.J.,** and **BOCK, J.,** concur.